### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

PABLO CALDERON,                              :
     Petitioner,                            :                    CIVIL CASE NO.
                                  :                    3:21cv724 (JCH)
v.                                           :
                                    :
UNITED STATES OF                             :
AMERICA,                                     :                    JUNE 27, 2022
     Respondent.                           :

## RULING RE: PETITIONER'S <u>PRO SE</u> MOTION TO VACATE SENTENCE
## (DOC. NO. 1)

## I.   INTRODUCTION

In this case seeking habeas corpus relief, <u>pro se</u> petitioner Pablo Calderon ("Calderon") moves to vacate his sentence pursuant to section 2255 of title 28 of the United States Code.  For the reasons set forth below, Calderon's Motion (Doc. No. 1) is denied.

## II.   BACKGROUND

On February 20, 2015, a federal grand jury indicted Calderon on charges of conspiracy, wire fraud, bank fraud, and making a false statement.  <u>See</u> USA v. Lillemoe et al., 15-cr-25, Indictment (Doc. No. 1).[1]

Almost all of the counts against Calderon in the Indictment revolved around his involvement with the United States Department of Agriculture's ("USDA") Export Credit Guarantee program ("GSM-102"), a program in which U.S. banks agree to repay U.S. exporters if foreign banks default on letters of credit promising to reimburse U.S.

---

[1] Calderon's codefendants, Brett Lillemoe and Sarah Zirbes, faced overlapping charges in the same Indictment.  <u>See</u> 15-cr-25, Indictment (Doc. No. 1)

exporters on behalf of foreign importers.  See 7 C.F.R. § 1493 (2014).  The only exception was a single count alleging that Calderon made a false statement in connection with the Federal Bureau of Investigation's investigation into the scheme. Id. at ¶¶ 55-56.  More specifically, the Indictment alleged that Calderon and his coconspirator created multiple entities to win a disproportionate number of GSM-102 guarantees, which are typically split pro rata among applicants, id. at ¶ 29-33; USA v. Lillemoe et al., 15-cr-25, Trial Tr. at 799:17-800:21, and further altered bills of lading marked "copy non negotiable" by whiting out that marking and stamping the word "original" in its place.  USA v. Lillemoe et al., 15-cr-25, Indictment at ¶ 40. The Indictment also alleged that Calderon and a coconspirator altered documents by adding shading to portions of documents to make the alterations less apparent.  Id. at ¶ 41. Calderon's wire fraud convictions involved transactions with CoBank, while the letter of credit in the transaction was issued by a Russian bank called IIB and the goods were shipped on a vessel called Cool Express.  Id. at ¶ 23.

To prove the wire fraud and bank fraud charges against Calderon, the government needed to prove beyond a reasonable doubt the following elements:

[Wire fraud requires] "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of . . . wires to further the scheme." Fountain v. United States, 357 F.3d 250, 255 (2d Cir. 2004) (internal quotation marks and brackets omitted).  Similarly, the federal bank fraud statute criminalizes the "'knowing execution' of a scheme to 'defraud a financial institution.'"  United States v. Bouchard, 828 F.3d 116, 124 (2d Cir. 2016) (quoting 18 U.S.C. § 1344) (brackets omitted).  Thus, both wire fraud and bank fraud require the Government to prove that the defendant had an intent to deprive the victim of money or property.  Moreover, to establish the existence of a scheme to defraud, the Government must prove the materiality of a defendant's false statements or misrepresentations.

USA v. Lillemoe et al., 15-cr-25, Mandate (Doc. No. 593) (emphasis in original).  Since his indictment, Calderon has repeatedly challenged the sufficiency of the evidence as to the materiality of any misrepresentations, the existence of a scheme to defraud, and his intent to harm the financial institutions at issue.

On May 11, 2016, Calderon moved to dismiss the Indictment, arguing that the alleged changes to the bills of lading were not material and, thus, any such alterations could not support criminal charges for fraud.  See USA v. Lillemoe et al., 15-cr-25, Mot. to Dismiss Indictment at 1 (Doc. No. 110).  The court denied Calderon's Motion to Dismiss, ruling that the issue of materiality should be left to the jury.  See USA v. Lillemoe et al., 15-cr-25, Ruling Denying Mot. to Dismiss Indictment at 13, 15 (Doc. No. 181).

The case proceeded to trial, where the jury found Calderon's alterations or changes to be material and fraudulent.  See USA v. Lillemoe et al., 15-cr-25, Jury Charge at 56 (Doc. No. 323).  On November 9, 2016, the jury convicted Calderon on the conspiracy and wire fraud counts.  See USA v. Lillemoe et al., 15-cr-25, Jury Verdict (Doc. No. 324).

One month later, on December 9, 2016, Calderon filed a Motion for Acquittal or for a New Trial, which the court denied.  See USA v. Lillemoe et al., 15-cr-25, Mot. for Acquittal (Doc. No. 337); USA v. Lillemoe et al., 15-cr-25, Mem. in Support of Mot. for Acquittal (Doc. No. 338); USA v. Lillemoe et al., 15-cr-25, Ruling Denying Mot. for Acquittal (Doc. No. 420).  In his Motion for Acquittal, Calderon argued that insufficient evidence existed of a scheme to defraud the banks, and that any misrepresentations or alterations were immaterial.  See USA v. Lillemoe et al., 15-cr-25, Mem. in Support of

Mot. for Acquittal at 11-29.  He further contended that there was insufficient evidence of

unlawful agreement or intent in the record to support his conspiracy charge.  The court

determined, however, that there was sufficient evidence to prove that the defendants

deprived the banks of information needed to make an economic decision, the

misrepresentations were material, and the banks were harmed by the defendants'

deception.  Id. at 9-22.  The court further held that there was sufficient evidence to

support the conspiracy conviction.  Id. at 22-26.  On June 13, 2017, the court sentenced

Calderon to a below-guidelines sentence of five months of imprisonment, three years of

supervised release, a $200 special assessment, and restitution of $63,509.97.[2]  See

Judgment, Doc. No. 488.

Calderon obtained appellate counsel and timely filed an appeal to the United

States Court of Appeals for the Second Circuit.  See USA v. Lillemoe (Calderon), 17-

1956, Notice of Appeal (Doc. No. 1); USA v. Lillemoe (Calderon), 17-1956, Notice of

Appearance (Doc. No. 115).[3]  On appeal, Calderon argued, again, that the evidence

was insufficient to establish a scheme to defraud, as Calderon could not be shown to

have made material misrepresentations.  See USA v. Lillemoe (Calderon), 17-1956,

Page Proof Brief for Calderon at 26-41 (Doc. No. 125).  He added claims that this court

had improperly instructed the jury as to the Allen charge, the requisite contemplated

harm, and the bank fraud charge.  Id. at 43-59.  In his Reply, which he filed pro se after

---

[2] The guidelines range was 108-135 months.  See 15-cr-25, Statement of Reasons (Doc. No. 505).

[3] Mr. Calderon's attorney submitted a brief on his behalf, see 17-1956, Brief (Doc. No. 125), but subsequently filed a Motion to be Relieved, which the Court granted. See 17-1956, Motion to be Relieved (Doc. No. 159); Order Granting Motion to be Relieved (Doc. No. 162); 17-196, Notice of Termination (Doc. No. 163).  Mr. Calderon has proceeded pro se since June 15, 2018.

his attorney withdrew, Calderon continued to argue that the trial evidence could not

have established the materiality of his alterations or misrepresentations nor that he had

contemplated harm to the banks as required to establish fraud. USA v. Lillemoe

(Calderon), 17-1967, Calderon Reply Brief (Doc. No. 185). The Circuit rejected

Calderon's arguments and affirmed his conviction, his term of imprisonment, and his

forfeiture order, reversing only the court's order that he pay restitution. See USA v.

Lillemoe et al., 15-cr-25, Mandate (Doc. No. 593).  In so doing, the Circuit held that that:

> [T]here was sufficient evidence presented at trial to support the jury's
> conclusion that the Defendants violated the wire fraud and conspiracy
> statutes. . . .  [T[he district court did not err in giving the jury a "no ultimate
> harm" instruction, did not plainly err in charging the jury on the elements of
> bank fraud, and did not abuse its discretion in giving a modified Allen charge
> to the jury.

Id. at 4.

Calderon, acting pro se, filed a Petition for Rehearing, which was denied.  See

USA v. Lillemoe (Calderon), 17-1956, Petition for Rehearing or Rehearing en Banc

(Doc. No. 301); USA v. Lillemoe (Calderon), 17-1956, Order Denying Petition for

Rehearing (Doc. No. 311).  In that Petition, Calderon again contended that the

misrepresentations underlying the wire fraud charges were not material.  See USA v.

Lillemoe (Calderon), 17-1956, Petition for Rehearing or Rehearing en Banc at 6 (Doc.

No. 301).  Specifically, Calderon challenged what he argued was the Panel's failure to

properly apply the Uniform Commercial Code ("UCC") in considering his appeal.  Id. at

6-10.  Thus, he asserted, the substantive wire fraud count should fail, as should the

conspiracy charge.  Id. at 11-12.  He also again argued that the theories of

contemplated harm were legally insufficient, id. at 12-16, and that several evidentiary

errors required vacatur.  Id. at 17.  These errors included, he suggested, the improper

testimony of bank representatives Womack and Effing as well as USDA official Doster, whom Calderon contended inappropriately offered expert testimony while testifying as lay witnesses.  See id. at 16-17.  The Second Circuit rejected these arguments, summarily denying Calderon a rehearing or rehearing en banc.  See USA v. Lillemoe (Calderon), 17-1956, Order Denying Petition for Rehearing.

The Second Circuit issued its Mandate on March 17, 2020.  See USA v. Lillemoe et al., 15-cr-25, Mandate (Doc. No. 593).  On the same day, Calderon filed a defective Motion to Stay the Mandate, see USA v. Lillemoe (Calderon), 17-1956, Mot. to Stay (Doc. Nos. 313 & 314), then filed a Motion to Recall the Mandate two days later on March 19, 2020.  See USA v. Lillemoe (Calderon), 17-1956, Mot. to Recall (Doc. No. 314).  Calderon's Motion to Recall echoed many of the same arguments he had advanced in earlier filings: the Court had ignored defenses available under the UCC and, thus, the wire fraud conviction was legally insufficient because any misrepresentations were immaterial; the theory of contemplated harm was legally insufficient; and inadmissible lay witness testimony was not sufficient to support a determination regarding materiality or harm.  Id. at 1-7.  The Second Circuit denied Calderon's Motion to Recall the Mandate.  See USA v. Lillemoe (Calderon), 17-1956, Order Denying Mot. to Recall (Doc. No. 320).

This court issued an Amended Judgment removing the restitution order pursuant to the Second Circuit's Mandate on March 27, 2020.  See USA v. Lillemoe et al., 15-cr-25, Am. J. (Doc. No. 612).  On August 17, 2020, Calderon filed a Writ of Certiorari with the United States Supreme Court.  See Calderon v. USA, 20-176, Petition for Writ of Certiorari (Doc. No. 1).  In his Petition, Calderon argued once more that the Second

Circuit had failed to properly apply the UCC, and that, had the Panel done so, it would have determined no underlying fraud had occurred because neither the materiality of the misrepresentation nor the contemplated harm element had been proven.  See id. at 2-4; 14-15.  The Supreme Court denied his Petition on December 15, 2020.  See USA v. Lillemoe (Calderon), 17-1956, Notice of Denial (Doc. Nos. 329 & 330).

The court now considers Calderon's Motion to Vacate his Sentence.  See Mot. to Vacate Sentence (Doc. No. 1).  In the instant Motion, Calderon repeats several arguments raised on direct appeal.  He argues that the "Appeals Court opinion in this case suffers from multiple legal flaws", contending that the Panel failed to properly apply the UCC. See Mot. to Vacate at 14-16.  He also reasserts his argument that any misrepresentations were not sufficient to sustain the materiality element of the fraud charges.  Id.  Lastly, he contends that the record contains insufficient evidence to support the "contemplated harm" element of the fraud charges.  Id. at 16.

## III.    LEGAL STANDARD

Section 2255 of title 28 of the United States Code permits a federal prisoner to move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Therefore, relief is available "under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

7

The petitioner bears the burden of proving that he is entitled to relief by a preponderance of the evidence.  See Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).  However, because Calderon is proceeding pro se, the court must read his "submissions broadly so as to determine whether they raise any colorable legal claims." Parisi v. United States, 529 F.3d 134, 139 (2d Cir.2008) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145–46 (2d Cir.2002)).

## IV.   DISCUSSION

Calderon raises several claims for relief, each of which has been considered and rejected by the Second Circuit on direct appeal.  He now asks this court to revisit and reconsider the Second Circuit's decision.  See Mot. to Vacate at 13.  However, the fact that Calderon has received appellate review of his claims[4] means that he may not raise them again in this proceeding, as "[i]t is well established that a [section] 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal."  United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (internal quotations and citation omitted).  In other words, a defendant is procedurally barred from raising in a collateral attack an issue that was adjudicated on direct appeal.  See id.  Moreover, the Second Circuit has made clear that "the mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate."  Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010).  In deciding whether an issue was resolved by the appellate court, "a district court should look to both the specific dictates

---

[4] Not only has Calderon received appellate review of his claims, but he has also petitioned for and been denied a rehearing en banc before the Second Circuit as well as a Writ of Certiorari before the United States Supreme Court.

of the remand order as well as the broader spirit of the mandate." Id. (internal quotation marks and citations omitted).

The first issue which Calderon has previously raised is whether any misrepresentations in one transaction, the "Cool Express" Transaction, were material. See Mot. to Vacate at 16-20. Calderon argues again that the UCC establishes his "actual innocence"[5] with respect to the fraud charge, as he contends the misrepresentations were not "materially fraudulent" under the UCC. Id. However, the question of the materiality of these misrepresentations has been addressed multiple times over the course of this litigation: by this court in denying a pretrial motion preserving the question of materiality for the jury, see USA v. Lillemoe et al., 15-cr-25, Ruling Denying Mot. to Dismiss Indictment at 13, 15; by the jury at trial which found the statements material, see USA v. Lillemoe et al., 15-cr-25, Jury Charge at 56, USA v. Lillemoe et al., 15-cr-25, Jury Verdict; and again by this court in denying Calderon's Motion for Acquittal or for a New Trial. USA v. Lillemoe et al., 15-cr-25, Mot. for Acquittal; USA v. Lillemoe et al., 15-cr-25, Mem. in Support of Mot for Acquittal; USA v. Lillemoe et al., 15-cr-25, Ruling Denying Mot. for Acquittal. Calderon also raised the same argument before the Second Circuit on direct appeal and in his Petition for a Rehearing, as well as in his Petition for Certiorari to the Supreme Court, all of which were denied. See USA v. Lillemoe (Calderon), 17-1956, Page Proof Brief for Calderon at 5, 27-43 (Doc. No. 125); USA v. Lillemoe (Calderon), 17-1956, Calderon Reply Brief at 1-9 (Doc. No. 185); USA v. Lillemoe (Calderon), 17-1956, Petition for Rehearing or

---

[5] The court discusses Calderon's contention that he is actually innocent below. See pp. 11-12, infra.

Rehearing en Banc at 6-10; <u>USA v. Lillemoe (Calderon)</u>, 17-1956, Order Denying

Petition for Rehearing (Doc. No. 311); <u>Calderon v. USA</u>, 20-176, Petition for Writ of

Certiorari at 2-4, 14-15.  This court will not reconsider the materiality of Calderon's

statements, which has been resolved by this court, the jury, and the Second Circuit's

mandate.

Second, Calderon contends once again that the bills of lading he presented to

Co-Bank are actually authentic, truthful, and strictly complying.  <u>See</u> Mot. to Vacate at

20.  Calderon raised this argument at trial, contending that a copy altered with whiteout

and a new original stamp was effectively a true original.  <u>See</u> Ruling at 20-22.  The jury

found against Calderon, and this court upheld the jury's finding in its Ruling Denying

Calderon's Motion for Aquittal.  <u>See USA v. Lillemoe et al.</u>, 15-cr-25, Ruling Denying

Mot. for Acquittal.  Calderon raised the same argument in his Reply to the

Government's Opposition on direct appeal, <u>USA v. Lillemoe (Calderon)</u>, 17-1956,

Calderon Reply Brief at 1, 4, 11-15, 28-29, and in his Petition for a Rehearing en Banc

before the Second Circuit. <u>See</u> <u>USA v. Lillemoe (Calderon)</u>, 17-1956, Petition for

Rehearing or Rehearing en Banc at 8; <u>USA v. Lillemoe (Calderon)</u>, 17-1956, Order

Denying Petition for Rehearing.  He raised the same argument once more in his Petition

for Certiorari before the Supreme Court, <u>see</u> <u>Calderon v. USA</u>, 20-176, Petition for Writ

of Certiorari at  22.  The court cannot now relitigate these issues.

Third, Calderon disputes the sufficiency of evidence that he contemplated harm

to the banks, as he argues that the threat of "protracted and costly litigation" does not

constitute harm.  <u>See</u> Mot. to Vacate at 29.  However, the Second Circuit addressed this

argument head-on in its Decision disposing of Calderon's appeal, rejecting the

argument and reaffirming the findings of the jury and the judgment of this court.  See USA v. Lillemoe et al., 15-cr-25, Mandate at 34.  Thus, the court cannot revisit the question as to whether Calderon contemplated harm to the banks.

Fourth, Calderon argues that his conspiracy conviction should be vacated because, were the court to accept the arguments he raised regarding the underlying substantive fraud charges, the conspiracy charge would not lie.  See Mot. to Vacate at 35.  Like his other claims, this argument is procedurally barred because Calderon has raised it previously on direct appeal, see USA v. Lillemoe (Calderon), 17-1956, Page Proof Brief for Calderon at 25, 59, and in his rejected Petition for a Rehearing en Banc. See USA v. Lillemoe (Calderon), 17-1956, Petition for Rehearing or Rehearing en Banc at 11-12.  Further, because both this court and the Second Circuit have determined that Calderon's underlying substantive fraud charges are not "legally insufficient",  see, pp. 7-11, supra, they do not provide a ground upon which to vacate his conspiracy conviction.

Fifth, he questions the propriety of the government's witnesses, arguing that there is insufficient evidence to support two factual findings: (1) that Calderon and his coconspirator entered into an agreement to change dates on documents used in several transactions, see Mot. to Vacate at 37-38, and, again, (2) that there is insufficient evidence of the materiality of the altered dates.  See id. at 37-44.  However, as Calderon himself acknowledges, see id. at 43-44, the Second Circuit rejected Calderon's arguments regarding the insufficiency of the evidence of materiality and affirmed this court's conviction and the jury's finding that a conspiracy existed.  See

USA v. Lillemoe et al., 15-cr-25, Mandate.  This argument is therefore foreclosed to Calderon.

Lastly, he argues that the forfeiture and sentence should be vacated along with the bank and wire fraud convictions.  See Mot. to Vacate at 44.  However, the Second Circuit affirmed both the forfeiture and sentence in its Decision affirming the convictions and reversing the restitution order.  See USA v. Lillemoe et al., 15-cr-25, Mandate.  Further, the bank and wire fraud convictions have not been vacated.  Thus, the court cannot vacate the sentence or the order of forfeiture.

In his Motion, Calderon couches his recycled arguments in the language of "actual innocence", asserting that he is innocent as a matter of law given his perception that this court and the Second Circuit erred in reasoning or judgment regarding his claims.  See, e.g., Mot. to Vacate at 13, 20.  However, while "actual innocence, if proved, serves as a gateway through which a petitioner may pass [when] the impediment is a procedural bar", a petitioner must meet a stringent standard and "persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. (citation and internal quotation marks omitted).  Calderon has identified no new facts or evidence pointing to his innocence, and his rephrased legal arguments do not meet this high bar, as "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24 (1998) (citation omitted).  Therefore, Calderon's mischaracterized assertion of "actual innocence" cannot eliminate the procedural bar to his claims.

**V.      CONCLUSION**

For the foregoing reasons, Calderon's Motion to Vacate the Sentence (Doc. No. 1) is denied.  Because Calderon has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2). The Clerk is hereby directed to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of June 2022.


              /s/ Janet C. Hall      
Janet C. Hall
United States District Judge